**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION**

| | |
|---|---|
| CHRISTOPHER ASHLOCK, ) | |
|  ) | |
| Plaintiff, ) | |
|  ) | |
| v. ) | Case No. 2:14-cv-00360-JMS-MJD |
|  ) | |
| J SEXTON Correctional Officer, Individually ) | |
| and in his Official Capacity, ) | |
|  ) | |
| Defendant. ) | |

**Entry Granting Defendant's Motion for Summary Judgment**

On August 11, 2014, Christopher Ashlock, an inmate housed in the Secured Control Unit at Wabash Valley Correctional Facility ("Wabash Valley"), tripped and fell down the stairs on his way to the shower. At the time he fell, Ashlock was handcuffed behind his back and wearing his shower shoes (flip flops). He was escorted, but not physically assisted by a correctional officer. Ashlock was knocked unconscious as a result of the fall and transported to the Terre Haute Regional Hospital for emergency treatment. In this action, Ashlock seeks money damages from Correctional Officer Jon Sexton who was responsible for transporting Ashlock down the stairs to the shower.[1]

---

[1] Ashlock concedes that his injunctive relief claims are moot because he is no longer at Wabash Valley. Dkt. 45 at p. 10. See *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996); s*ee also Sanders v. Venture Stores, Inc.,* 56 F.3d 771, 773 (7th Cir.1995) (quoting *Moore v. Thieret,* 862 F.2d 148, 150 (7th Cir.1988)) ("If inmate is transferred to another prison, the inmate's request for injunctive relief against officials of the first prison is moot unless 'he can demonstrate that he is likely to be retransferred.'"). The result is that the claim against Officer Sexton in his official capacity is denied as **moot**. Although this claim has been abandoned, the Indiana Department of Corrections should

1

Defendant Correctional Officer Sexton seeks resolution of the claims alleged against him through summary judgment. He argues that Ashlock's constitutional rights were not violated and he is entitled to qualified immunity as to any money damages. For the reasons explained below, Officer Sexton is entitled to judgment as a matter of law on his qualified immunity defense.

## Standard of Review

A motion for summary judgment asks the Court to find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. Pro. 56. To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

The key inquiry, then, is whether admissible evidence exists to support a plaintiff's claims, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections,* 175 F.3d 497, 504 (7th Cir. 1999). When evaluating this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial ... against the moving party." *Celotex,* 477 U.S. at 330.

## Undisputed Facts

Ashock is an offender confined at the Indiana Department of Correction ("DOC"). Defendant Correctional Officer Sexton ("Officer Sexton") has been employed by the DOC as a correctional officer since 1998 and continues to be employed by the DOC at Wabash Valley.

---

take note of this lawsuit and take measures to improve the safe transport of offenders descending stairs while cuffed behind their back.

2

On August 11, 2014, Ashlock was confined in the Secure Confinement Unit ("SCU") of Wabash Valley where Officer Sexton was working his shift. On this date, between 2 and 3 p.m., Ashlock was to receive an escort to the shower unit.

Offenders confined in the SCU are required to be in hand restraints when they are being escorted from their cell to the shower unit. In addition, 99% of the time, a restraint leash is also placed on the offender prior to being escorted to the shower. The only time a restraint leash would not be used is if the offender's cell is directly next door to the shower or recreation unit, in which case just the hand restraints may be used.

Two correctional officers conduct the escort of the offender to the shower unit. Once the offender is escorted to the shower unit, the door is closed behind the offender and the restraints are removed. The policy does not specifically discuss a correctional officer's responsibility to the offender as they ascend or descend a stairway. The relevant policy states:

> Offenders will be restrained behind the back, with the lead strap applied to the double locked hand restraints. The Escorting Officer will maintain two hands on the lead strap at all times. The assisting Escort Officer shall maintain proper escort position by holding onto the wrist of the offender where the handcuff is located and the staff member's other hand being located just above the offender's elbow, with the staff member's fingers on the front of the offender's arm. Once the escort is completed, the second Escort Officer will remove the restraints while the first Escort Officer maintains control of the lead strap. The second Escorting Officer will stay in close proximity (within the length of the lead strap) to the first Escorting Officer and the offender during the movement.

Dkt. 27-3, p. 2-3 (Post Order).

On August 11, 2014, Officer Sexton arrived at Ashlock's cell and placed both the hand restraints and restraint leash on Ashlock prior to removing Ashlock from his cell. There were no shackles on Ashlock's feet or legs. Ashlock's cell was opened and Officer Sexton began escorting Ashlock to the shower unit located on the floor below Ashlock's cell. Correctional Officer Stanley

3

Burris was present.[2] As Ashlock walked towards the stairs, Officer Sexton followed closely behind him, holding the restraint leash. According to Ashlock, when they reached the top of the stairs, Ashlock's sandal was "halfway on, halfway off," and he attempted to "push my foot in right there at the edge of the stairs, and when I'm sitting there going to push my foot in, it's like it's tipping me forward." Dep. of Ashlock, Dkt. 41-1 at p. 8.

Ashlock had his hands cuffed behind his back and was unable to catch his balance. Officer Sexton had only one hand on the restraint leash, which was pulled from his grip as Ashlock fell. Ashlock fell to the bottom of the stairs.[3] Officer Stanley Burris, who was at the top of the stairs, called in a signal 3000, which indicates a medical emergency had taken place. Medical staff arrived shortly thereafter and took over medical treatment. Ashlock was then transported to the Terre Haute Regional Hospital for emergency treatment. Ashlock was X-rayed and also had a CAT scan performed on him at the Terre Haute Regional Hospital, which according to Ashlock revealed "a small amount of swelling between disks," but no breaks or fractures.

## Discussion

Officer Sexton argues that he is entitled to judgment as a matter of law because Ashlock's Eighth Amendment rights were not violated. He claims that the fall suffered by Ashlock was due to Ashlock's own negligence, that he did nothing to cause the accident to occur, and that he had

---

[2] The defendants describe Correctional Officer Stanley Burris's presence as assisting in the escort. But the video reflects that he did nothing to physically assist and instead was simply observing the movement.

[3] There is some dispute regarding whether Ashlock or Officer Sexton was distracted before descending the stairs. Ashlock admitted to looking towards cell 512 after the offender in that cell requested a razor, although Ashlock claims he was not ultimately distracted. (Ex. D., Dep of Ashlock, p. 40-41). Relatedly, Ashlock testified in his deposition that Officer Sexton was taking on his radio just prior to his fall.

4

no opportunity to prevent the accident. Officer Sexton argues that even if there was a constitutional violation he is entitled to judgment as a matter of law on his qualified immunity defense. For the reasons explained below, there are material facts in dispute regarding the nature of the hazard, Officer Sexton's knowledge of the hazard and his ability to prevent the harm that occurred which makes summary judgment on the basis that there was no Eighth Amendment violation inappropriate. No liability can attach, however, because Officer Sexton is entitled to qualified immunity.

**Eighth Amendment**

Ashlock's claim is asserted pursuant to 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988). Section 1983 is not itself a source of substantive rights; instead it is a means for vindicating federal rights elsewhere conferred. *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir. 1997) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, "the first step in any [§ 1983] claim is to identify the specific constitutional right infringed." *Albright v. Oliver,* 510 U.S. 266, 271 (1994).

As explained in the screening Entry of November 26, 2014, the Eighth Amendment's proscription against the imposition of cruel and unusual punishment provides the constitutional standard for the treatment of convicted offenders such as Ashlock. *Helling v. McKinney*, 113 S. Ct. 2475, 2480 (1993). That is the pertinent constitutional provision associated with the claim in this action. Under the Eighth Amendment, prison officials must take reasonable measures to guarantee the safety of the inmates. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994). In a

"conditions" case, Eighth Amendment liability attaches when a plaintiff shows that the condition he complains of was objectively serious enough to demonstrate that he was deprived of the "'minimal civilized measure of life's necessities,'" *id.,* (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)), and that the named prison official acted with deliberate indifference to his health or safety. *Id.* (citing *Wilson v. Seiter,* 501 U.S. 294, 302-03 (1991)). In relation to the second of these elements, to be "deliberately indifferent," a state of mind derived from criminal recklessness, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Thus the first question is whether the hazard alleged is sufficiently serious to invoke the Eighth Amendment. Officer Sexton argues that the stairs on which Ashlock fell did not pose a substantial risk of sufficiently serious harm. If the stairs were the only problem, this argument would be consistent with numerous cases which suggest that as a matter of law, "prisoner slip-and-fall claims almost never serve as the predicate for constitutional violations." *Coleman v. Sweetin*, 745 F.3d 756, 764 (5th Cir. 2014) (per curiam) (cited by *Pyles v. Fahim* 2014 WL 5861515, 8 (7th Cir. 2014).[4] But the stairs were not the sole problem in this case. During screening the Court found that Ashlock alleged a hazard sufficiently serious to invoke the Eighth Amendment. That hazard is the following: descending stairs with metal grating, in sandals, with

---

[4] *See also Reynolds v. Powell*, 370 F.3d 1028, 1031 (10th Cir. 2004) (upholding dismissal at summary judgment of Eighth Amendment claim brought by inmate who attributed slip-and-fall to standing water in shower, since "slippery floors constitute a daily risk faced by members of the public at large"); *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir.1993) (reasoning that, even if shackled inmate might fall on wet floor while showering, allegations of "slippery prison floors" do not state "even an arguable claim for cruel and unusual punishment") (*quoting Jackson v. Arizona*, 885 F.2d 639, 641 (9th Cir. 1989))).

6

hands cuffed behind the back without any assistance. The undisputed video evidence which captures these circumstances confirms that the court's prior articulation of the hazard was accurate.

Given the hazard at issue, Officer Sexton's claim that there are no special circumstances that require departure from the general rule that bars Eighth Amendment liability in prison slip-and-fall cases misses the mark. In support, Officer Sexton points to *Daniels v. Williams*, 474 U.S. 327 (1986). In that case, the Supreme Court held an inmate who allegedly sustained injuries when he slipped on a pillow negligently left on a stairway by jail employee did not state a constitutional violation. But as the dissent in *Davidson v. Cannon*, 474 U.S. 344, 355 (1986) points out:

> in *Daniels*, . . . "[t]he only tie between the facts ... and anything governmental in nature" is the identity of the parties. In *Daniels*, the negligence was only coincidentally connected to an inmate-guard relationship; the same incident could have occurred on any staircase. *Daniels* in jail was as able as he would have been anywhere else to protect himself against a pillow on the stairs. The State did not prohibit him from looking where he was going or from taking care to avoid the pillow.

*Id.* at 455 (J. Blackmun, dissenting). The record in this case reflects that Ashlock was not able to protect himself against a fall on the stairs because Officer Sexton handcuffed him behind his back. Requiring an inmate to descend stairs, with his hands cuffed behind his back, in sandals, without any assistance or means with which to brace himself, is sufficiently hazardous under the Eighth Amendment.[5]

---

[5] Officer Sexton argues that Ashlock did not fall because of his descent down the stairway, but because he tried to slip his shower sandal back on his foot at the top of the stairway, prior to beginning his descent. The video does not reflect that the fall occurred prior to the time Ashlock began his descent. But even if true, it is unclear how the fact that Ashlock fell from the top of the stairs instead of lower on the stairwell helps Officer Sexton's defense. The precise point at which a "descent" begins is not material.

Having found that the hazard alleged is sufficiently serious to invoke the Eighth Amendment, the second question is whether there is any evidence which reflects that Officer Sexton acted with deliberate indifference with respect to the alleged hazard. *Harper v. Albert*, 400 F.3d 1052, 1065 (7th Cir. 2005). Indeed, "negligence or even gross negligence is not enough; rather the plaintiffs must show *actual intent* or *deliberate indifference* on the part of state actors in order to make out an eighth amendment claim." *James v. Milwaukee Co.,* 956 F.2d 696, 699 (7th Cir. 1992) (emphasis in original); *see also Walker v. Benjamin,* 293 F.3d 1030, 1037 (7th Cir. 2002) (same); *Delgado–Brunet v. Clark,* 93 F.3d 339, 345 (7th Cir. 1996).

Whether Officer Sexton had the requisite *mens rea* to comprise a constitutional injury is a material fact in dispute. The video reflects that Officer Sexton was responsible for escorting Ashlock down the stairs. He was clearly aware that Ashlock was in shower shoes and was required to descend the stairs with his hands cuffed behind his back. He did not provide any physical bracing or assistance. There was a substantial risk that Ashlock would fall and there can be no dispute that an inmate falling down metal stairs with his hands cuffed behind his back will result in sufficiently serious injury. Officer Sexton, like any observer, would be aware of these facts. Yet, the video shows he did nothing to protect Ashlock.[6]

Officer Sexton claims that he did not cause Ashlock's fall and he did not ignore the hazard because he restrained Ashlock's hands behind his back and applied a restraint leash as dictated by policy. But by following the portion of the policy which required Ashlock to be handcuffed behind

---

[6] Based on the evidence before the Court, the possibilities appear to have been numerous. Ashlock could have been cuffed in the front in order to grasp the railing, (consistent with the post order) Ashlock could have been supported by the other officers in the video that were observing, or someone could have walked in front of Ashlock holding the handrail to stop Ashlock from falling all the way to the bottom of the stairs in the event Ashlock slipped.

his back, Officer Sexton prohibited Ashlock from having any opportunity to steady himself on the stairs with the railing or any chance to stop his fall or protect his head and face with his hands or arms.

Officer Sexton states that he was just following policy. But that same policy required Officer Sexton to maintain control of the leash with two hands, and instructed that an assisting escort officer was to hold onto the wrist of the offender where the handcuff is located while their other hand is placed above the offender's elbow with the assisting escort officer's fingers on the front of the offender's arm. Officer Sexton implemented the portion of the policy that created the risk of serious injury but failed to implement the portions of the policy that could have provided Ashlock physical assistance down the stairs. These circumstances do not reflect that Officer Sexton took reasonable measures to insure Ashlock's safety during his transfer to the shower unit.

A reasonable jury could conclude that Officer Sexton's actions demonstrate total unconcern for Ashlock's welfare in the face of a serious risk. On the other hand, the jury could conclude that Officer Sexton did not perceive the risk and that his actions do not amount to more than negligence. Based on these factual disputes summary judgment on the basis that Officer Sexton was not deliberately indifferent to Ashlock's safety must be denied.

**Qualified Immunity**

Officer Sexton argues that even if there was a constitutional violation, he is not liable for money damages because he is entitled to qualified immunity. Ashlock argues that defendant is not entitled to qualified immunity. He states that "pointing to defendant's acts of deliberate indifference and liability clearly shows plaintiff felt that defendant was not qualified to immunity." Dtk. 45 at p. 10.

To make a qualified immunity determination, the court must "(1) determine whether the plaintiff has alleged the deprivation of an actual constitutional right and (2) if so, determine whether that right was clearly established at the time of the alleged violation." *Sparing v. Village of Olympia Fields,* 266 F.3d 685, 688 (7th Cir. 2001) (*citing Saucier v. Katz*, 533 U.S. 194 (2001)(citations omitted)). Once raised, the plaintiff, not the defendant, carries the burden of overcoming the affirmative defense. *Sparing*, 266 F.3d at 688 (*citing Spiegel v. Cortese*, 196 F. 3d 717 (7th Cir. 1999).

For the reasons stated above, there are material facts in dispute regarding whether Officer Sexton violated Ashlock's Eighth Amendment rights. The dispositive question then is whether an inmate's right to physical assistance while descending stairs with his hands cuffed behind his back was clearly established on August 11, 2014, when Ashlock fell down the stairs. It was not.

This conclusion is not reached lightly. Watching the video of Ashlock fall down the stairs and rendered unconscious when such a result could have been prevented is highly disturbing. But this Court's analysis must follow the Supreme Court's rulings. In this regard, *Mullenix v. Luna,* 136 S.Ct. 305 (2015) is instructive. The Supreme Court explained:

> A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards,* 566 U.S. ——, ——, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) (internal quotation marks and alteration omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd,* 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). Put simply, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).
> "We have repeatedly told courts ... not to define clearly established law at a high level of generality." *al–Kidd, supra,* at 742, 131 S.Ct. 2074. The dispositive question is "whether the violative nature of *particular* conduct is clearly established." *Ibid.* (emphasis added). This inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v.*

> *Haugen,* 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (*per curiam*) (quoting *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

*Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). Given the facts in this case, this court cannot say that only someone "plainly incompetent" or who "knowingly violate[s] the law" would have perceived that descending stairs while handcuffed behind the back and without physical assistance violates an inmate's Eighth Amendment rights. This conclusion is bolstered by the testimony of Lt. Nicholson who reviewed the video and found no policy or procedural error. Dkt. 27-2 at p. 3. In addition, Ashlock himself stated that he had been down those same stairs (presumably with his hands cuffed behind his back and escorted by other officers) hundreds of times. Dkt. 27-6 at p. 10. He further testified in his declaration that "[i]t is common practice of the staff at Wabash Valley to escort offenders without securing them according to policy." Dkt. 39 at ¶ 11. The fact that it is common practice to escort offenders cuffed behind their back down the stairs without physical assistance reflects that the right to physical assistance was not sufficiently clear. In other words, at the time of the accident, not every reasonable official understood that the failure to provide physical support to an inmate cuffed behind the back as they descend the stairs violates the inmates' constitutional rights.

But most importantly, no Supreme Court case or "robust consensus of cases of persuasive authority" in the Courts of Appeals establishes the right to physical assistance when an inmate is required to descend stairs while his hands are cuffed behind his back. *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (finding "no decision of this Court establishes a right to the proper implementation of adequate suicide prevention protocols. No decision of this Court even discusses suicide screening or prevention protocols.").

11

In addition, even though Officer Sexton's actions were inconsistent with the Post Order, that fact does not itself negate qualified immunity where it would otherwise be warranted. *City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1777 (2015) (stating "[e]ven if an officer acts contrary to her training, however, (and here, given the generality of that training, it is not at all clear that Reynolds and Holder did so), that does not itself negate qualified immunity where it would otherwise be warranted.").

## Conclusion

"When summary judgment is sought on a qualified immunity defense, the court inquires whether the party opposing the motion has raised any triable issue barring summary adjudication." *Ortiz v. Jordan*, 562 U.S. 180, 184 (2011). In this case, Ashlock has not raised a material fact in dispute on the qualified immunity defense. Officer Sexton is entitled to judgment as a matter of law on his qualified immunity defense. Officer Sexton's motion for summary judgment [dkt. 26] is **granted.**

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: June 27, 2016

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

CHRISTOPHER ASHLOCK
137864
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

All Electronically Registered Counsel